**POTTER HANDY LLP**
Mark D. Potter (SBN 166317)
James M. Treglio (SBN 228077)
Isabel Rose Masanque (SBN 292676)
classactions@potterhandy.com
100 Pine St., Ste 1250
San Francisco, CA 94111
(415) 534-1911
Fax: (888) 422-5191

Attorneys for Plaintiff, on behalf of herself and all others similarly situated

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| REBECCA MATULIC, on behalf of herself and all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>MEMORIAL HEALTH SERVICES, INC., a California nonprofit public benefit corporation; MEMORIALCARE MEDICAL FOUNDATION, a California nonprofit medical foundation; and DOES 1-100, inclusive<br><br>Defendants. | CASE NO.<br><br>**CLASS COMPLAINT FOR VIOLATIONS OF:**<br><br>**(1) VIOLATION OF CALIFORNIA INVASION OF PRIVACY ACT (Cal. Penal Code §§ 632 & 637.2);**<br>**(2) THE CONFIDENTIALITY OF MEDICAL INFORMATION ACT, CIVIL CODE §§ 56, ET SEQ.);**<br>**(3) VIOLATION OF UNFAIR COMPETITION LAW (Cal. Bus. & Prof. Code § 17200 et seq.);**<br>**(4) INVASION OF PRIVACY - INTRUSION UPON SECLUSION;**<br>**(5) FEDERAL WIRETAP ACT, 18 U.S.C. § 2510 *et seq*.**<br><br>**DEMAND FOR JURY TRIAL** |

Class Representative Plaintiff Rebecca Matulic ("Plaintiff"), by and through her attorneys, individually and on behalf of all others similarly situated, alleges upon personal knowledge as to her own acts and experiences and upon information and belief as to all other matters as follows:

**NATURE OF THE ACTION**

1. This putative class action challenges the alleged use of an ambient artificial-intelligence clinical-documentation service supplied by Abridge AI, Inc. ("Abridge") during confidential patient-provider encounters in the MemorialCare health system without clear advance notice, all-party consent, or a valid authorization for the disclosure of medical information.

2. Abridge is alleged to capture live patient-provider speech when a clinician affirmatively activates the service, transmit or otherwise process the acquired communication through systems associated with Abridge, and generate draft clinical documentation.

3. Defendants Memorial Health Services, Inc. and MemorialCare Medical Foundation (collectively, the "MemorialCare Defendants" or "Defendants") are alleged, on information and belief and in the alternative, to have deployed, authorized, administered, contracted for, controlled, or permitted the use of Abridge during patient encounters within the MemorialCare health system, including the encounter involving Matulic described below.

4. On November 13, 2025, Matulic received medical care from a healthcare provider at a MemorialCare-affiliated family medicine facility in Long Beach, California.

5. During the encounter, Matulic personally spoke with the provider about confidential medical matters and sensitive health information. The provider used a computer to review chart information and enter notes.

6. No one mentioned Abridge, an artificial-intelligence scribe, recording, transcription, or automated clinical notes to Matulic. No recording or artificial-intelligence notice or consent was presented, and Matulic did not sign or verbally agree to recording or third-party artificial-intelligence processing.

7. Matulic did not see an Abridge name or logo, a recording indicator, a transcript, or an artificial-intelligence-generated note during the November 13 encounter. The computer screen was not directed toward her.

8. Matulic does not have direct knowledge that Abridge was activated during the November 13 encounter. The provider's use of a computer to review a chart or enter notes, standing alone, does not establish that Abridge or any recording function was active.

9. At a different MemorialCare-affiliated urgent-care setting, Matulic observed equipment that appeared capable of recording. She could not identify the system or confirm that it was active. That separate observation does not by itself establish that Abridge recorded the November 13 encounter.

10. Matulic alleges on information and belief, subject to confirmation through encounter-specific activation, consent, and clinical-documentation records, that Abridge was activated during her November 13, 2025 encounter. Matulic's personal observations do not independently confirm that allegation.

11. On the same information and belief, activation caused Abridge to acquire the substance of Matulic's live communication contemporaneously with the encounter and to transmit or process that communication for clinical-documentation purposes. The communication concerned confidential medical matters and sensitive health information; this Complaint does not disclose unnecessary details about those matters.

12. Matulic was not asked for permission before any alleged acquisition began and did not provide prior, express, and informed consent to the recording, interception, transmission, processing, storage, disclosure, or use of her confidential communication. She also did not receive or execute a written authorization identifying Abridge or describing the purpose and scope of any disclosure.

13. The information presently available to Matulic does not establish which MemorialCare entity operated the facility, employed or contracted with the provider, selected or administered any ambient recording system, or maintained any relevant records. Matulic does not allege as an established fact that either named Defendant operated the facility or controlled Abridge.

14. The allocation of responsibility among the named Defendants, any related MemorialCare entity, the provider, and Abridge is reflected in contracts, system-access records, activation logs, consent records, clinical documentation, and related materials that were not visible to Matulic. Claims against each named Defendant are asserted only to the extent its own conduct, or conduct legally attributable to it, is established.

15. The proposed Classes are limited to persons whose confidential communications were actually acquired through Abridge and for whom one or both named Defendants are shown to have deployed, authorized, administered, controlled, or caused the challenged acquisition. Mere access to Abridge or the presence of a computer or recording-capable device is insufficient.

16. By allegedly causing or permitting actual Abridge acquisitions without valid consent or authorization, the responsible Defendant or Defendants violated California and federal privacy law and invaded the privacy rights of Matulic and similarly situated patients.

## **PARTIES**

17. Plaintiff Rebecca Matulic resides in Signal Hill, California and has an intent to remain there, and is therefore a citizen of California. Plaintiff was in California when she visited Memorial Care.

18. Defendant Memorial Health Services, Inc. is a California nonprofit public benefit corporation that operates the Memorial Care health system. Memorial Health Services manages and oversees hospitals, clinics, and affiliated physician organizations that provide healthcare services to patients in California. Memorial Health Services exercises control over the policies, technologies, and clinical documentation systems implemented across the Memorial Care network.

19. Defendant MemorialCare Medical Foundation is a California nonprofit medical foundation that employs and contracts with physicians who provide medical services within the Memorial Care health system. MemorialCare Medical Foundation operates clinics and medical offices where physicians provide patient care and where clinical documentation technologies—including ambient artificial intelligence recording systems used during medical visits—are deployed during physician-patient encounters.

## VENUE AND JURISDICTION

20. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) because Plaintiff, and at least one member of the putative Class, as defined below, are citizens of a different state than Defendant, there are more than 100 putative Class Members, and the amount in controversy exceeds $5 million, exclusive of interest and costs.

21. This Court also has federal-question jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts a claim under the Federal Wiretap Act, 18 U.S.C. §§ 2510 et seq., and supplemental jurisdiction over the related California-law claims under 28 U.S.C. § 1367.

22. This Court has personal jurisdiction over the MemorialCare Defendants because they are California corporations that operate and direct healthcare-related commerce within California and, upon information and belief, direct commerce to this District. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Matulic's claims, including her November 13, 2025 encounter, occurred in Long Beach, California, within this District.

## I. INTRODUCTION

### A. The Confidentiality of Medical Information Act

23. Under the Confidentiality of Medical Information Act, Civil Code §§ 56, *et seq.* ("CMIA"), Plaintiff and all other persons similarly situated, had a right to keep their individually identifiable medical information confidential. The short title of the CMIA states, "The Legislature hereby finds and declares that persons receiving health care services have a right to expect that the confidentiality of individual identifiable medical information derived by health service providers be reasonably preserved. It is the intention of the Legislature in enacting this act, to provide for the confidentiality of individually identifiable medical information, while permitting certain reasonable and limited uses of that information." The CMIA specifically provides that "a provider of health care, health care service plan, or contractor shall not disclose medical information regarding a patient of the provider of health care or an enrollee or subscriber of a health care service plan without first obtaining an authorization...." Civil Code. § 56.10(a). The CMIA further provides that

"Every provider of health care, health care service plan, pharmaceutical company, or contractor who creates, maintains, preserves, stores, abandons, destroys, or disposes of medical records shall do so in a manner that preserves the confidentiality of the information contained therein. Any provider of health care, health care service plan, pharmaceutical company, or contractor who negligently creates, maintains, preserves, stores, abandons, destroys, or disposes of medical records shall be subject to the remedies ... provided under subdivisions (b) ... of Section 56.36." Civil Code § 56.101(a).

24. Defendants are providers of health care, contractors, and/or other covered entities within the meaning of CMIA and maintain and handle individually identifiable medical information relating to MemorialCare patients, including Matulic. Matulic and the members of the proposed MemorialCare Class are "patients" within the meaning of Civil Code § 56.05(k) whose individually identifiable medical information was created, maintained, and handled in connection with their medical treatment. The communications recorded during Matulic's medical encounter—including discussions regarding symptoms, medical history, diagnoses, medications, treatment plans, and other health matters—constitute "medical information" within the meaning of Civil Code § 56.05(j) because they relate to a patient's medical condition and identify the patient. By recording, transmitting, processing, and allowing third-party access to those confidential medical communications through Abridge without a valid authorization, the MemorialCare Defendants disclosed or handled Matulic's medical information in violation of CMIA.

25. Civil Code § 56.36(b) provides Plaintiff, and all other persons similarly situated, with a private right to bring an action against Defendants for violation of Civil Code § 56.101 by specifically providing that "[i]n addition to any other remedies available at law, any individual may bring an action against any person or entity who has negligently released confidential information or records concerning him or her in violation of this part, for either or both of the following: (1) ... nominal damages of one thousand dollars ($1,000). In order to recover under this paragraph, *it shall not be necessary that the plaintiff suffered or was threatened with actual damages*. (2) The amount of actual damages, if any, sustained by the patient."

**B. The California Invasion of Privacy Act**

26. The California Legislature enacted the California Invasion of Privacy Act ("CIPA") to protect privacy against new devices and techniques capable of eavesdropping upon private communications. Cal. Penal Code § 630.

27. CIPA prohibits intentionally recording or eavesdropping upon a confidential communication without the consent of all parties to that communication. Cal. Penal Code § 632(a). A "confidential communication" includes any communication carried on in circumstances reasonably indicating that any party to the communication desires it to be confined to the parties involved. Communications between a patient and a physician during a medical visit constitute confidential communications within the meaning of CIPA because they occur in a private medical setting where patients reasonably expect that their discussions regarding symptoms, diagnoses, treatment, and other personal health matters will remain private.

28. CIPA provides a private right of action to any person whose confidential communication has been recorded or intercepted in violation of the statute. Cal. Penal Code § 637.2 authorizes recovery of statutory damages of five thousand dollars ($5,000) per violation or three times the amount of actual damages, whichever is greater.

**C. The Federal Wiretap Act**

29. The ECPA, commonly referred to as the Federal Wiretap Act, 18 U.S.C. §§ 2510 et seq., prohibits the intentional interception, use, or disclosure of the contents of any wire, oral, or electronic communication through the use of any electronic, mechanical, or other device. It was originally enacted in October 1986 to extend privacy protections to emerging technologies. In drafting the legislation, Congress acknowledged that "[t]he dramatic development of the Internet has transformed methods of gathering, processing and sharing information." Senate Judiciary Committee Report (S. Rep. No. 99-541, 1986). Therefore, the statute aimed to address "individuals' concerns that a sufficient degree of privacy and the integrity of personal information are maintained in an age of modern communications and information storage." *Id.*

30. Although limiting overreach by law enforcement was one of the main purposes of the statute, the ECPA explicitly applies to private actors, including "any individual, partnership,

association, joint stock company, trust, or corporation" who illegally intercepts, or attempts to intercept the communications. 18 U.S.C. § 2511.

31. Communications between a patient and a physician during a medical appointment constitute protected communications under the statute because they involve private discussions concerning medical symptoms, diagnoses, treatment plans, and other confidential health matters. The Federal Wiretap Act provides a private right of action to any person whose communications are intercepted, disclosed, or intentionally used in violation of the statute. 18 U.S.C. § 2520.

32. The statute authorizes individuals to recover civil damages of up to $10,000 from any person who violates the provisions of the ECPA.

33. Matulic asserts her Federal Wiretap Act claim only against the Defendants on behalf of the MemorialCare Class.

## II. THE ABRIDGE AMBIENT AI CLINICAL-DOCUMENTATION SYSTEM

### A. Abridge's Alleged Operation

34. Abridge is an artificial-intelligence-powered ambient clinical-documentation service designed to capture, transcribe, process, and summarize conversations between healthcare providers and patients during medical encounters.

35. Unlike ordinary manual documentation, in which a provider types or dictates selected information, Abridge is alleged to acquire the live oral communication itself, convert speech into text, and apply artificial-intelligence models to generate structured draft clinical documentation.

36. Abridge's clinician workflow is alleged to require a clinician to select a patient and affirmatively begin recording before the service acquires an encounter. The platform does not acquire a conversation merely because a clinician has access to the application.

37. When affirmatively activated, Abridge is alleged to acquire the contents of a patient-provider communication contemporaneously with the communication's occurrence through a microphone-enabled device.

38. Upon information and belief, the acquired audio or speech data is transmitted to or processed on systems associated with Abridge for transcription, analysis, summarization, and generation of draft clinical documentation.

39. The acquired communication and any resulting transcript or note may contain individually identifiable medical information concerning the patient's medical history, condition, diagnosis, treatment, and other sensitive health matters.

40. The precise configuration of the platform, the activation time, the portion of an encounter acquired, the transmission path, the generated transcript or note, retention periods, and access records are ordinarily not visible to the patient and are reflected in technical and clinical records maintained by the responsible entities or vendor.

41. Healthcare organizations may obtain operational or financial benefits from ambient documentation, including reduced documentation burden, faster generation of clinical notes, and more complete capture of information used in clinical and billing workflows.

**B. Consent and Authorization Safeguards**

42. Abridge's clinician instructions are alleged to identify patient consent as an important part of the workflow and recommend that a clinician tell the patient that a tool will record the conversation and ask whether that is acceptable before recording begins.

43. A patient can reasonably expect that participating healthcare personnel will hear the conversation and that relevant information will be entered into a medical record without expecting that an undisclosed third-party ambient service will acquire the live oral exchange.

44. A general notice of privacy practices addressing contractors, transcription, treatment, payment, healthcare operations, or maintenance of medical records does not necessarily provide clear advance notice that a microphone-enabled artificial-intelligence service will acquire a live patient-provider communication.

45. Whether a patient received clear advance notice, whether the patient consented before activation, and whether a valid medical-information authorization existed can be determined from consent forms, scripts, electronic-health-record fields, opt-out records, activation logs, encounter documentation, and vendor records.

## III. MATULIC'S MEMORIALCARE ENCOUNTER

### A. Facts Within Matulic's Direct Knowledge

46. On November 13, 2025, Matulic received medical care at a MemorialCare-affiliated family medicine facility in Long Beach, California.

47. Matulic personally spoke with her healthcare provider during a private medical consultation concerning confidential medical matters and sensitive health information.

48. The provider used a computer in the examination room, reviewed chart information, and entered notes. Matulic did not observe the provider use a separately identifiable recording device during that encounter.

49. No one told Matulic that Abridge, an artificial-intelligence scribe, recording, transcription, or automated clinical-note technology would acquire or process the live conversation.

50. Matulic was not asked for permission to record or process the encounter and did not sign or verbally agree to recording or artificial-intelligence processing.

51. Matulic did not see an Abridge screen, logo, recording indicator, transcript, or artificial-intelligence-generated note. The screen was not pointed toward her, and she did not know what software, if any, was running.

52. Matulic therefore cannot identify from direct observation whether Abridge was activated during the November 13 encounter. She does not rely on the mere presence of a computer as proof of recording.

53. At a different MemorialCare-affiliated urgent-care setting, Matulic observed equipment that appeared capable of recording. She could not determine whether it was active or whether it was Abridge. She does not treat that separate observation as direct proof of recording during the November 13 encounter.

### B. Allegations on Information and Belief and Facts Requiring Confirmation

54. Matulic alleges on information and belief that Abridge was affirmatively activated during her November 13, 2025 encounter. That allegation is subject to confirmation through encounter-specific records and is not presented as a fact personally observed by Matulic.

55. On the same information and belief, the alleged activation caused Abridge to acquire the substance of Matulic's live patient-provider communication contemporaneously with its occurrence and to transmit or process the communication for clinical-documentation purposes.

56. The alleged acquired communication concerned Matulic's medical history, condition, treatment, or care and was linked to her as the identified patient. This Complaint refers to the content only as confidential medical matters and sensitive health information and does not disclose unnecessary personal medical details.

57. Matulic did not provide prior, express, and informed consent to the alleged acquisition, recording, transmission, processing, storage, disclosure, or use of the communication.

58. Matulic did not receive or execute a written authorization identifying Abridge or another artificial-intelligence vendor, describing the purpose and scope of any disclosure, specifying its duration, or explaining a right to revoke.

59. The precise date and time of any activation, the device used, the portion of the communication acquired, the resulting audio, transcript, or note, the transmission and retention records, and the identity of persons or systems that accessed the content were not visible to Matulic.

60. Those facts can be established, if at all, from records maintained by the provider, the facility operator, one or both Defendants, another MemorialCare entity, Abridge, or their agents, including user-entitlement records, activation logs, consent records, clinical-documentation metadata, and contracts.

61. Matulic's current information does not establish that either named Defendant operated the facility or controlled the alleged recording system. It also does not establish which Defendant, if either, authorized, administered, contracted for, benefited from, disclosed, or used the alleged acquisition.

62. Matulic alleges the role of each Defendant on information and belief and in the alternative because the relevant allocation of responsibility is within the Defendants' and related entities' knowledge and control. Liability is sought only against a Defendant whose own role or legally attributable conduct is established.

63. The alleged acquisition invaded Matulic's interest in controlling sensory access to her confidential medical communication at the time of acquisition. The alleged injury is particularized because it concerns her own patient-provider communication and does not depend on public dissemination.

64. Matulic reports that MemorialCare is the healthcare system through which she receives medical treatment. She seeks to continue obtaining care without undisclosed acquisition of her confidential communications and faces a risk of recurrence if the challenged practice exists and continues without adequate notice and consent safeguards.

## IV. THE MEMORIALCARE DEFENDANTS' ALLEGED ROLES AND PRACTICE

### A. Defendant-Specific Attribution

65. Upon information and belief, Memorial Health Services, Inc. may have had a system-level role concerning policies, procurement, contracting, technology governance, or clinical-documentation tools within the MemorialCare health system. The present materials do not establish that role as to Matulic's encounter.

66. Upon information and belief, MemorialCare Medical Foundation may have had a role concerning providers, clinical operations, or documentation systems within the MemorialCare health system. The present materials do not establish that it operated Matulic's facility, employed or contracted with her provider, or controlled Abridge.

67. Matulic's current information indicates that another MemorialCare-affiliated entity may have operated the facility. This Complaint does not attribute facility operation to either named Defendant as an established fact.

68. The precise allocation of authority and responsibility may be shown by corporate records, facility records, provider agreements, vendor contracts, system-administration records, user-entitlement data, activation logs, consent procedures, and electronic-health-record integrations.

69. The claims against the MemorialCare Defendants are not based on collective liability arising merely from a shared trade name. Each Defendant is liable only for its own conduct, conduct it authorized or caused, or conduct legally attributable to it under applicable law.

**B. Alleged Classwide Practice**

70. Upon information and belief, one or both MemorialCare Defendants deployed, authorized, administered, or permitted Abridge use during patient encounters within portions of the MemorialCare health system.

71. The scope of any deployment, the facilities and providers involved, the dates of use, and the allocation of responsibility among MemorialCare entities are not established by Matulic's direct observations and require confirmation from records.

72. The proposed Classes exclude encounters in which Abridge was merely available. A qualifying encounter requires an actual Abridge activation and acquisition of a confidential patient-provider communication without prior informed consent.

73. Actual acquisitions and responsible entities are capable of proof through Abridge activation records, user-access records, generated-note metadata, encounter documentation, contracts, consent fields, and opt-out records, to the extent such records exist.

74. Upon information and belief, the responsible Defendant or Defendants failed to establish or enforce uniform procedures sufficient to ensure clear advance notice and prior, express, and informed consent before qualifying communications were acquired through Abridge.

75. A general notice of privacy practices does not itself establish that each Class Member received notice of live ambient recording before activation or consented to that recording.

76. The alleged practice caused common privacy harms, including invasion of the right to control access to confidential communications and loss of control over sensitive medical information. Matulic disclaims any request for classwide recovery of personal-injury damages.

## V. CLASS ACTION ALLEGATIONS

77. Matulic brings this action on her own behalf and on behalf of all other persons similarly situated. The putative Classes she seeks to represent are composed of:

**MemorialCare Class**

All United States residents whose confidential patient-provider communications were actually acquired through Abridge during a healthcare encounter in the MemorialCare health system, where one or both Defendants deployed,

authorized, administered, controlled, or caused the Abridge activation and prior informed consent was not obtained and/or consent had been declined, from two years before the filing of this action through the date of an order granting class certification and/or preliminary approval of a class-action settlement (the "MemorialCare Class").

**MemorialCare California Subclass**

All California residents whose confidential patient-provider communications were actually acquired through Abridge during a healthcare encounter in the MemorialCare health system, where one or both Defendants deployed, authorized, administered, controlled, or processed using the artificial-intelligence recording platform developed by Abridge AI, Inc. without their prior informed consent and/or despite declining consent, from one year before the filing of this action through the date of an order granting class certification and/or preliminary approval of a class-action settlement (the "MemorialCare California Subclass").

78. Excluded from the MemorialCare Class and MemorialCare California Subclass are natural persons who are directors or officers of either Defendant, as well as judicial officers, their families, and their staff assigned to this action. Matulic expressly disclaims any request for class-wide recovery of personal-injury damages.

79. Matulic is informed and believes that the members of the Classes are so numerous that joinder is impracticable. The exact number is presently unknown and can be ascertained through appropriate discovery activation, clinical-documentation, consent, and related records maintained by the responsible entities and Abridge.

80. There is a well-defined community of interest among members of the MemorialCare Class and MemorialCare California Subclass because common questions of law and fact predominate, Matulic's claims are typical of the members' claims, and Matulic can fairly and adequately represent their interests.

81. Common questions of law and fact exist as to the Classes and predominate over questions affecting only individual members, including:

(a) Whether one or both Defendants deployed, authorized, permitted, administered, or controlled the use of Abridge during patient encounters;

(b) Whether the Defendants failed to implement or enforce a protocol reasonably designed to ensure that patient consent was obtained before recording;

(c) Whether the Defendants violated Penal Code § 632;

(d) Whether doctor–patient conversations during MemorialCare-affiliated medical consultations constitute "confidential communications" within the meaning of CIPA;

(e) Whether recording and transmission of audio or transcripts from qualifying MemorialCare encounters involved "medical information" within the meaning of CMIA;

(f) Whether one or both Defendants violated Whether CMIA Civil Code §§ 56, et seq.;

(g) Whether the Defendants' practices constitute "unlawful," "unfair," and/or "fraudulent" business acts or practices under the UCL;

(h) Whether the Defendants committed intrusion upon seclusion by causing or permitting private medical consultations to be recorded without valid consent;

(i) Whether the Defendants Whether Defendant violated the Federal Wiretap Act, 1828 U.S.C. §§ 2510 et seq.;

(j) Whether the Defendants sought or obtained prior consent—express or otherwise—from Matulic and MemorialCare Class Members;

(k) Whether Matulic and Class Members are entitled to actual and/or statutory damages; and

(l) The appropriate form and scope of injunctive relief necessary to remedy and prevent recurrence of the MemorialCare Defendants' practices.

82. Matulic's claims are typical because, like each qualifying Class Member, she alleges on information and belief that her own confidential patient-provider communication was actually acquired through Abridge without prior informed consent. Her claim is subject to confirmation through the same categories of activation and consent records.

83. Matulic will fairly and adequately protect the interests of the Classes. Matulic has no interest contrary to or in conflict with those classes and has retained competent counsel experienced in class-action litigation to prosecute the MemorialCare claims vigorously.

84. The prosecution of separate actions by individual MemorialCare Class Members would create a risk of inconsistent or varying adjudications and repetitious trials of common questions. A class action is superior to other available methods for the fair and efficient adjudication of the MemorialCare controversy, and Matulic knows of no management difficulty that would preclude class treatment.

85. Proper and sufficient notice of the MemorialCare claims may be provided to MemorialCare Class Members through direct mail, electronic notice, or other methods approved by the Court.

86. Individual statutory and privacy damages may be insufficient to justify the cost of separate litigation. Without class treatment, alleged violations causing substantial aggregate harm may go unremedied.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### Violation of the California Invasion of Privacy Act, Cal. Penal Code §§ 632 and 637.2 (MemorialCare California Subclass only)

87. Matulic incorporates the preceding allegations concerning Matulic, the MemorialCare Defendants, the MemorialCare Class, and the MemorialCare California Subclass as if fully set forth herein.

87. Matulic brings this cause of action under Penal Code § 637.2 for violations of Penal Code § 632, which prohibits the intentional recording of a confidential communication, including a communication made in the presence of another, without the consent of all parties.

88. Matulic's medical conversation was a confidential communication within the meaning of Penal Code § 632 because it occurred during a private medical consultation and concerned her health, treatment, and care under circumstances reasonably indicating that she

expected the live conversation to remain confined to participating patient and healthcare personnel and not to be acquired by an undisclosed ambient-AI service.

89. Matulic's expectation of confidentiality did not depend on believing that her provider would create no medical record. Matulic expected ordinary clinical documentation. She did not expect a microphone-enabled artificial-intelligence platform to acquire the live oral exchange and process its contents through third-party systems.

90. During Matulic's encounter, a MemorialCare-affiliated provider actually utilized Abridge. Because the Abridge workflow requires the clinician to select the patient and affirmatively begin recording, the actual use and resulting capture alleged by Matulic support an intentional activation rather than an accidental acquisition or mere availability of the service.

91. Once activated, Abridge acquired the contents of Matulic's communication while Matulic and her provider were speaking.

92. Before the acquisition began, Matulic did not receive clear notice that the encounter would be recorded through Abridge or another ambient-AI platform and did not consent to that recording.

93. A general notice of privacy practices concerning medical records, contractors, transcription, treatment, payment, or healthcare operations did not inform Matulic that a microphone-enabled service would acquire the live oral communication during the encounter and did not constitute her consent to that recording.

94. Each MemorialCare California Subclass Member's qualifying encounter involves an actual Abridge activation and acquisition, not merely an encounter in which Abridge was available to a provider.

95. Each acquisition of a qualifying confidential communication without prior consent constituted a separate violation of Penal Code § 632.

96. As a direct and proximate result of the MemorialCare Defendants' conduct, Matulic and MemorialCare California Subclass Members suffered an invasion of their legally protected privacy interests and a loss of control over their confidential communications.

97. Under Penal Code § 637.2, Matulic and MemorialCare California Subclass Members are entitled to statutory damages of $5,000 per violation or three times actual damages, whichever is greater, as well as injunctive relief and other relief the Court deems proper.

**SECOND CAUSE OF ACTION**

**Violations of the Confidentiality of Medical Information Act,**

**Civil Code § 56 et seq.**

**(MemorialCare California Subclass only)**

98. Matulic incorporates the preceding allegations concerning Matulic, the MemorialCare Defendants, the MemorialCare Class, and the MemorialCare California Subclass as if fully set forth herein.

99. Each MemorialCare Defendant is a provider of health care, contractor, and/or other covered entity within the meaning of Civil Code § 56.05(d) to the extent of its respective role in creating, maintaining, transmitting, storing, disclosing, medical information as defined by Civil Code § 56.05(j).

100. Matulic and MemorialCare California Subclass Members are "patients" within the meaning of Civil Code § 56.05(k). During qualifying medical encounters, they disclosed highly sensitive and confidential health information to healthcare providers in private patient-consultations. During those encounters, Abridge captured, recorded, and transmitted the substance of the conversations for automated transcription and documentation purposes.

101. The recordings and transcripts generated through Abridge contained individually identifiable medical information, including medical histories, symptoms, diagnoses, medications, treatment discussions, and other sensitive health disclosures. That information constitutes "medical information" within the meaning of Civil Code § 56.05(j) because it relates to a patient's medical history, condition, diagnosis, or treatment and identifies the patient.

102. The MemorialCare Defendants disclosed or caused the transmission of Matulic's and MemorialCare California Subclass Members' medical information to Abridge without first obtaining valid written authorizations satisfying Civil Code §§ 56.10 and 56.11. Among other deficiencies, the MemorialCare Defendants failed to obtain authorizations that:

- clearly identified the recipient of the medical information;
- described the purpose of the disclosure;
- specified the nature and extent of the medical information to be disclosed;
- provided a defined duration for the authorization; and
- informed patients of their right to revoke authorization.

103. Upon information and belief, systems, employees, agents, or contractors associated with Abridge had the ability to access, review, or process audio recordings or transcripts containing Matulic's and MemorialCare California Subclass Members' medical information for purposes associated with transcription and platform operation. The precise access and use applicable to MemorialCare encounters are within the possession, custody, or control of the MemorialCare Defendants, Abridge, or their agents and will be established through discovery.

104. The MemorialCare Defendants further failed to maintain and preserve the confidentiality of Matulic's and MemorialCare California Subclass Members' medical information as required by Civil Code § 56.101(a) by causing or permitting confidential medical communications to be transmitted outside the immediate medical encounter without valid authorization and without adequate safeguards.

105. By recording, transmitting, disclosing, and failing to safeguard confidential medical information without valid authorization, the MemorialCare Defendants violated Civil Code §§ 56.10 and 56.101 to the extent of their respective participation, authorization, control, or responsibility.

106. As a direct and proximate result of the MemorialCare Defendants' unlawful conduct, Matulic and MemorialCare California Subclass Members suffered injury, including unauthorized disclosure of confidential medical information, invasion of privacy, loss of control over sensitive health data, emotional distress, and dignitary harm.

107. Under Civil Code § 56.35, Matulic and MemorialCare California Subclass Members actual damages, punitive damages not to exceed $3,000, and attorneys' fees of $1,000 for each unauthorized disclosure to the extent authorized by law.

108. Under Civil Code § 56.36, Matulic and MemorialCare California Subclass Members are also entitled to statutory nominal damages of $1,000 per violation, actual damages where applicable, punitive damages as permitted by law, equitable and declaratory relief, and reasonable attorneys' fees and costs.

**THIRD CAUSE OF ACTION**

**Violation of the Unfair Competition Law,**

**Cal. Bus. & Prof. Code §§ 17200 et seq.**

**(MemorialCare California Subclass only)**

109. Matulic incorporates the preceding allegations concerning Matulic, the MemorialCare Defendants, the MemorialCare Class, and the MemorialCare California Subclass as if fully set forth herein.

110. The UCL prohibits any unlawful, unfair, or fraudulent business act or practice.

**Unlawful Prong**

111. The MemorialCare Defendants' acts and practices are "unlawful" under the UCL because they violate CIPA, CMIA, and other laws designed to protect the privacy and confidentiality of medical information.

112. Those statutory violations constitute predicate unlawful acts under the UCL.

**Unfair Prong**

113. The MemorialCare Defendants' conduct is "unfair" because it offends established public policy and is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

114. The MemorialCare Defendants exploited patients' vulnerability and trust in the medical setting by causing or permitting confidential medical communications to be recorded and transmitted to a third-party technology vendor without valid authorization to advance operational or financial interests.

115. Any claimed utility from improved documentation or efficiency is outweighed by the invasion of privacy and erosion of trust in the patient-provider relationship.

**Fraudulent Prong**

116. The MemorialCare Defendants' conduct is also "fraudulent" within the meaning of the UCL because it is likely to deceive members of the public, including patients seeking medical care.

117. Patients reasonably expect that confidential patient-provider conversations will not be recorded, transmitted to technology vendors, or processed through artificial-intelligence systems without clear notice and meaningful consent. By failing to disclose adequately the recording, transmission, and processing of qualifying MemorialCare encounters through Abridge, the MemorialCare Defendants created a misleading impression that the visits were conducted in the ordinary confidential manner expected in healthcare settings.

118. Those omissions and nondisclosures were material and likely to mislead reasonable patients regarding the privacy of their medical consultations and handling of their sensitive health information.

**Injury and Restitution**

119. Matulic would not have sought treatment from MemorialCare, or would have demanded different conditions of treatment, had she known that her confidential patient-provider communication would be recorded, transmitted to a third-party technology vendor, and processed through an artificial-intelligence system without her consent.

120. As a direct and proximate result of the MemorialCare Defendants' unlawful, unfair, and fraudulent business practices, Matulic and MemorialCare California Subclass Members suffered injury in fact and lost money or property, including payment of fees for medical services provided under circumstances that violated patients' privacy rights and statutory protections governing medical information.

121. Matulic and the MemorialCare California Subclass seek restitution and disgorgement of monies and benefits the MemorialCare Defendants obtained as a result of their unlawful, unfair, and fraudulent practices, including the portion of fees and economic benefits attributable to unauthorized recording and processing of patient communications.

122. Matulic further seeks injunctive relief under Business and Professions Code § 17203 requiring the MemorialCare Defendants to cease the challenged practices and implement lawful consent procedures and safeguards governing recording, processing, and disclosure of patient-provider communications.

## FOURTH CAUSE OF ACTION

**Invasion of Privacy - Intrusion Upon Seclusion**

**Against the MemorialCare Defendants**

**(MemorialCare California Subclass only)**

123. Matulic incorporates the preceding allegations concerning Matulic, the MemorialCare Defendants, the MemorialCare Class, and the MemorialCare California Subclass as if fully set forth herein.

124. Intrusion upon seclusion occurs when a defendant intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or the other's private affairs or concerns in a manner that would be highly offensive to a reasonable person.

125. Matulic and MemorialCare California Subclass Members engaged in private medical consultations with healthcare providers in examination rooms and other private clinical environments. Those conversations concerned highly personal and sensitive health information, including medical histories, symptoms, diagnoses, treatments, medications, mental health, sexual health, and other intimate matters.

126. Medical examination rooms and patient-provider consultations are quintessentially private spaces and conversations. Patients reasonably expect that their conversations in those settings will not be recorded or transmitted to third parties without their knowledge and consent.

127. The MemorialCare Defendants intentionally intruded into Matulic's and MemorialCare California Subclass Members' private affairs by causing, authorizing, or permitting Abridge to record confidential medical consultations through microphone-enabled electronic devices and external processing systems without valid notice or consent.

128. The intrusion into Matulic's encounter was deliberate rather than accidental because the provider actually utilized Abridge and the service required affirmative activation before acquiring the live communication.

129. The intrusions were highly offensive to a reasonable person because they captured intimate medical communications in one of the most sensitive contexts recognized by law and society and occurred without clear notice or meaningful consent.

130. Upon information and belief, the MemorialCare Defendants' motives included operational or commercial interests in improving documentation or efficiency rather than protecting patients from undisclosed acquisition of their confidential communications. A reasonable person would find it highly offensive for a healthcare system or medical foundation to prioritize those interests over fundamental privacy rights.

131. As a direct and proximate result of the MemorialCare Defendants' intrusions, Matulic and MemorialCare California Subclass Members suffered damages, including invasion of legally protected privacy interests, emotional distress, mental anguish, anxiety, anger, humiliation, loss of dignity and autonomy, loss of trust in healthcare providers, and apprehension regarding future medical visits.

132. Matulic and MemorialCare California Subclass Members are entitled to general and compensatory damages in amounts to be proven at trial.

133. The MemorialCare Defendants' conduct was carried out with oppression, fraud, or malice within the meaning of Civil Code § 3294 because they allegedly authorized or permitted an undisclosed recording system in a context of heightened privacy and failed to obtain valid consent. Matulic seeks punitive damages on behalf of herself and the MemorialCare California Subclass in an amount sufficient to punish and deter that conduct.

## FIFTH CAUSE OF ACTION

**Violation of the Federal Wiretap Act**

**Title 1 of the Electronic Communications Privacy Act ("ECPA") (18 U.S.C. § 2510, *et seq.*)**

**(MemorialCare Class)**

134. Matulic incorporates the preceding allegations concerning Matulic, the MemorialCare Defendants, and the MemorialCare Class as if fully set forth herein.

135. The Federal Wiretap Act prohibits the intentional interception, use, and/or disclosure of the contents of any wire, oral, or electronic communication. 18 U.S.C. § 2511(1)(a), (c), (d).

136. "Intercept" means the aural or other acquisition of the contents of a wire, electronic, or oral communication through the use of an electronic, mechanical, or other device. 18 U.S.C. § 2510(4).

137. "Contents" includes information concerning the substance, purport, or meaning of a communication. 18 U.S.C. § 2510(8).

138. "Person" includes any individual, partnership, association, joint stock company, trust, or corporation. 18 U.S.C. § 2510(6).

139. Matulic is an individual and therefore a "person" for purposes of § 2510(6).

140. Each MemorialCare Defendant is a corporation and therefore a "person" for purposes of § 2510(6).

141. During Matulic's qualifying MemorialCare encounter, a provider actually utilized Abridge, causing the service to acquire the substance of Matulic's live patient-provider communication contemporaneously with its occurrence through a microphone-enabled electronic device. By deploying, authorizing, permitting, or controlling that acquisition to the extent of their respective roles, the MemorialCare Defendants violated 18 U.S.C. § 2511(1)(a).

142. The MemorialCare Defendants further violated 18 U.S.C. § 2511(1)(c) by disclosing or causing the disclosure of the contents of Matulic's and MemorialCare Class Members'

intercepted communications through transmission to and processing on systems associated with Abridge without their consent.

143. The MemorialCare Defendants also violated 18 U.S.C. § 2511(1)(d) by using or causing the use of the intercepted communications to generate clinical documentation and obtain operational benefits without consent.

144. Matulic and MemorialCare Class Members did not provide prior express consent to the interception, disclosure, or use of their confidential patient-provider communications through Abridge.

145. As a result of the MemorialCare Defendants' violations of the Federal Wiretap Act, Matulic and MemorialCare Class Members suffered harm and injury, including invasion of privacy, loss of control over information, and loss of money or costs incurred, all of which have ascertainable value to be proven at trial.

146. Under 18 U.S.C. § 2520, Matulic and MemorialCare Class Members are entitled to damages assessed as the greater of actual damages plus profits made as a result of the violation or statutory damages of the greater of $100 per day per violation or $10,000, together with reasonable attorneys' fees and other litigation costs reasonably incurred.

## DEMAND FOR JURY TRIAL

147. Plaintiff and the Classes hereby demand trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Classes pray for judgment against Defendants as follows:

1. For an order certifying the MemorialCare Class and MemorialCare California Subclass, appointing Matulic as their representative, and appointing Plaintiff's attorneys as Class Counsel for those classes;
2. For an order declaring that the conduct of each responsible Defendant violates the statutes and common law identified in the causes of action;
3. For an order finding in favor of Matulic and the Classes on the causes of action asserted

against each responsible Defendant;

4. For nominal, actual, and/or statutory damages for each violation of CMIA section 56;
5. For statutory damages of $5,000 for each violation of CIPA section 632;
6. For actual damages, plus $3,000 in punitive damages, plus $1,000 in attorneys' fees for each and every unauthorized disclosure of medical information;
7. For nominal damages of $1,000 for each negligent release of medical information;
8. For statutory damages of $10,000 for each violation of the Federal Wiretap Act;
9. For pre- and post-judgment interest on all amounts awarded;
10. For an order of restitution and all other forms of equitable monetary relief; and
11. For declaratory and injucntive relief as necessary to protect Plaintiff and the Classes from the challenged practices, including:
    a. Ordering each responsible Defendant to cease intercepting, recording, transmitting, storing, processing, disclosing, or using confidential patient-provider communication through Abridge without valid notice, consent, and authorization;
    b. Ordering each responsible Defendant to implement safeguards, policies, and technical controls reasonably designed to ensure that no qualifying communication is acquired or processed without prior, express, and informed consent consistent with applicable law; and
    c. Ordering each responsible Defendant to purge, delete, or destroy in a reasonably secure manner unlawfully obtained medical communications or data not necessary for its provision of services.
12. For separate injunctive and other equitable relief as necessary to protect Matulic and the MemorialCare Classes from the MemorialCare Defendants' challenged practices, including:
    a. Ordering the MemorialCare Defendants to cease intercepting, recording, transmitting, storing, or processing confidential patient-provider communications through Abridge without valid authorization;

b. Ordering the MemorialCare Defendants to implement safeguards, policies, and technical controls to ensure that no patient-provider communication is acquired or processed without prior, express, and informed consent consistent with applicable law; and

c. Ordering the MemorialCare Defendants to purge, delete, and destroy in a reasonably secure manner unlawfully obtained communications or data not required to be retained by applicable law;

13. For an order awarding Plaintiffs and their respective Classes reasonable attorneys' fees, expenses, and costs of suit.

Dated: August 6, 2026

**POTTER HANDY LLP**

By: /s/ James M. Treglio

James M. Treglio, Esq.
Mark Potter, Esq.
Isabel Rose Masanque, Esq.
Attorneys for Plaintiff